18

POSTED ON WEBSITE

FILED
APR 5 2016
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re

Nancy V. Angwin,

Debtor.

Case No. 15-11120-B-7

United States,

Plaintiff,

v.

Nancy V. Angwin,

Defendant.

Adv. Proc. No. 15-01080

DC No. USA-1

**MEMORANDUM DECISION REGARDING MOTION FOR SUMMARY JUDGMENT**

Jeffrey J. Lodge, Esq., Assistant United States Attorney, appeared on behalf of the moving party and plaintiff, United States, acting on behalf of its agency, the Social Security Administration.

The defendant, Nancy V. Angwin, appeared *in propria persona*.

Before the court is a motion for summary judgment (the "Motion") brought by the plaintiff in this adversary proceeding, the United States on behalf of the Social Security Administration ("SSA"). The Motion is opposed by the defendant and debtor, Nancy V. Angwin ("Angwin"). The SSA seeks a declaration that it is entitled to recoup approximately $190,000 of pre-petition Social Security Disability Insurance ("SSDI") overpayments ("Overpayment") from post-petition SSDI benefits to which Angwin appears to be otherwise entitled ("Post-Petition Benefits").[1] An

---

[1]The court is not finding here that Angwin is entitled to any Post-Petition Benefits. That issue is not before the court. The SSA states that Angwin applied

administrative law judge ("ALJ") has already determined Angwin's liability for the Overpayment and liquidated the amount of the SSA's claim against Angwin ("SSA's Claim"). For the reasons set forth below, the Motion will be denied and the SSA's second claim for relief will be dismissed.[2]

The bankruptcy court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, 11 U.S.C. §§ 541 and 522, and General Orders No. 182 and 330 of the U.S. District Court for the Eastern District of California.[3] This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (O).

**BACKGROUND.**

In this Motion, SSA seeks a determination of its right to recoup the Overpayment from Angwin's Post-Petition Benefits.[4] Many years ago, Angwin was the disabled adult child of a person who was receiving SSDI

---

for Post-Petition Benefits. Her eligibility for Post-Petition Benefits of any kind is implicit in the fact that the SSA is seeking to recover the Overpayment from those Benefits

[2]The recoupment issue was raised in the SSA's second claim for relief. The SSA also alleged in first claim for relief that Angwin's liability for the Overpayment is excepted from discharge under a 11 U.S.C. § 523(a)(2)(A) fraud theory. By prior order, the fraud claim has been bifurcated and stayed pending a resolution of the recoupment issue. By a separate order, the adversary proceeding will be set for a further status conference and move forward with the first claim for relief.

[3]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

[4]The ALJ determined that, after Angwin's husband died, she applied for and was awarded Disability Benefits, widow's benefits, and survivor benefits for her three children. In the complaint, the SSA appears to seek recoupment only from Angwin's Post-Petition Disability Benefits. The statutory limitations on recoupment appear to have been changed by recent federal legislation (Bipartisan Budget Act of 2015).

benefits. As such, Angwin also qualified for and received SSDI benefits from the SSA ("Disability Benefits"). However, Angwin was married for many of the years she received Disability Benefits, which made her ineligible for those Benefits. Angwin was still receiving Disability Benefits when her husband died in September 2011. Subsequently, the SSA learned of Angwin's marriage. In November 2011, the SSA notified Angwin that her marriage had disqualified her from receiving benefits and that she had been overpaid. (Motion for Summary Judgment, supra, Exhibit 1, p. 3, Social Security Administration, Office of Disability Adjudication and Review, First Amended Decision.) Altogether, she was overpaid Disability Benefits totaling $214,372.90. The SSA demanded reimbursement of the Overpayment. Angwin requested a waiver of the Overpayment, which the SSA denied.

Prior to the filing of this chapter 7 bankruptcy petition, the SSA's claim for reimbursement of the Overpayment was fully adjudicated before an ALJ. In that decision, the ALJ did waive a portion of the Overpayment. However, the ALJ found Angwin at fault for not properly reporting her change in marital status and liable for the balance, $190,042.90 (the "ALJ Judgment"). Angwin did not appeal the ALJ Judgment and that decision is now final. Based on that Judgment, the amount of the SSA's claim has been liquidated for purposes of this adversary proceeding and cannot now be revisited by this court.[5]

Angwin filed a response to the Motion, but she did not contest any of the pertinent facts. Based on the SSA's separate statement of undisputed

---

[5]Angwin appeared at the hearing and stated that she disputes the amount of the ALJ Judgment. The court explained to Angwin that the amount of the Judgment has already been determined. The only issue in this adversary proceeding is whether collection of the ALJ Judgment is barred by Angwin's chapter 7 discharge.

facts, the findings in the ALJ Judgment, and documents in the record to which the court has taken judicial notice, the following facts appear to be undisputed:

1. Angwin was overpaid Social Security benefits in the amount of $214,372.90 during the period February 13, 1993 to September 1, 2011 (20 CFR 404.504).

2. Angwin was at fault in causing the Overpayment (20 CFR 404.506(a), 404.507, and 404.510a).

3. Repayment of $24,330.00, which represents the period from February 2010 through September 2011, was waived by the ALJ.

4. Recovery of the balance was not waived and Angwin is liable for repayment of $190,042.90, but not liable for $24,330.00 during the period February 13, 1993 to September 1, 2011 (20 CFR 404.506).

**ISSUE PRESENTED.**

In this adversary proceeding, the SSA prays for a determination that its right to recover the Overpayment, as liquidated in the ALJ Judgment, is nondischargeable and/or subject to recoupment from Angwin's Post-Petition Benefits.[6] This Motion deals solely with the recoupment issue pled in the SSA's second claim for relief. The legal issues raised therein are: 1) whether the doctrine of recoupment applies to the Overpayment on the undisputed facts of this case; and, if so, (2) whether recoupment of the Overpayment is subject to the chapter 7 discharge injunction. Based on the ruling below on the first issue, the second issue is irrelevant and will not be addressed.

**SUMMARY JUDGMENT STANDARD.**

Summary judgment in favor of the moving party is appropriate "if the movant shows that there is no genuine dispute as to any material fact

---

[6]It is not clear whether the SSA offset or recouped any of the Overpayment from Angwin's Disability Benefits between the issuance of the ALJ Judgment in 2013, and the commencement of this bankruptcy in 2015. The SSA only seeks a determination of its right to enforce the ALJ Judgment and recover the Overpayment from Post-Petition Benefits.

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), *incorporated by* Fed. R. Bankr. P. 7056. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003).

The parties may use summary judgment to dispose of all or part of the asserted claims for relief. *See* Fed. R. Civ. P. 56(a). Additionally, the court may *sua sponte* grant summary judgment in favor of the nonmoving party, as long as "the moving party against whom summary judgment [is] rendered had a full and fair opportunity to ventilate the issues involved in the motion." *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982). The filing of a formal cross-motion is not necessary. *See* Fed. R. Civ. P. 56(f); *Portsmouth Square, Inc. v. Shareholders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985).

As noted above, with regard to liquidation of the SSA's claim and the recoupment issue, there are no disputed issues of material fact. All of the facts necessary to decide that issue have been fully and fairly presented by the SSA in the Motion and supporting papers. Therefore, the recoupment issue appears to be ripe for summary adjudication.

**ANALYSIS AND CONCLUSIONS OF LAW.**

**The Statutory Basis for the SSA's Claim.** Under 42 U.S.C. chapter 7, the SSA administers the Social Security Act which provides for the payment of SSDI benefits to disabled individuals and Supplemental Security Income ("SSI") benefits to disabled individuals with limited

income and resources. The SSDI program also provides benefits, generally, to the unmarried, disabled child of a person who is eligible to receive SSDI payments, if their child became disabled before age 22. 42 U.S.C. § 402(d)(1); 20 C.F.R. §§ 404.350(c) and 404.352(4). In its pleadings, the SSA describes the SSDI program as "a payroll tax-funded, federal insurance program of the United States government. It is managed by the Social Security Administration and is designed to provide income supplements to people who are physically restricted in their ability to be employed because of a disability." (First Amended Complaint, ¶ 2.) In a recent decision, *Adinolfi v. Meyer (In re Adinolfi)*, 543 B.R. 612 (9th Cir. BAP 2015), the Ninth Circuit Bankruptcy Appellate Panel described the general purpose of the SSA programs "to benefit people who are needy in some respect; they are aged, sick, physically or mentally disabled, suffering from family separation or abuse, or the like." *Id.* at 620.[7]

Initially, Angwin began receiving SSDI benefits as the disabled child of a parent who was also eligible for SSDI benefits. However, SSDI recipients are subject to reporting responsibilities, which may limit their eligibility for further SSDI benefits. Recovery of overpayments is authorized pursuant to regulations providing that SSA may withhold future monthly benefits. 20 C.F.R. § 404.502. (Motion for Summary Judgment, November 18, 2015, pp. 2-3.)

**<u>The Recoupment Doctrine in the Ninth Circuit.</u>** In short, the SSA seeks to recover the Overpayment from Angwin's Post-Petition Benefits by suspending or reducing those payments until the Overpayment is satisfied. Given the amount of the ALJ Judgment, a ruling in favor of the SSA will

---

[7]In *Adinolfi*, the panel found that Adoption Assistance Program payments under a Social Security Administration program do not count toward a debtor's ability to repay creditors.

presumably result in a significant reduction or complete suspension of Angwin's right to receive any benefits from the SSA for much, if not all of her remaining natural life.

Two related but distinct legal doctrines, setoff and recoupment, may operate to reduce a creditor's claim through the application or adjustment of debts and credits owed between the creditor and debtor. The first doctrine, setoff, arises out of different and independent transactions between the debtor and the creditor. Section 553 provides that the pre-petition amounts owed by each party to one another may be setoff without regard to priority, unless the creditor's claim is otherwise avoidable. Setoff applies only when the parties are identical and the obligation is mutual. A creditor holding the right of setoff is a secured creditor to the extent of the setoff. § 506(a)(1). Since the SSA is not here seeking to recover its claim against pre-petition benefits, the doctrine of setoff is not before the court. The automatic stay applies to the right of setoff against pre-petition claims. The discharge injunction applies to the right of setoff against post-petition claims. *See* Bankruptcy Law Manual, 5th, 2015-1 Edition § 6:67.

The second doctrine is recoupment. Recoupment is an equitable doctrine which the Bankruptcy Code does not mention or define.[8] It has been defined as, "[t]he withholding, for equitable reasons, of all or part of something that is due." Black's Law Dictionary 1302 (8th ed. 2004). The bankruptcy courts have recognized the doctrine of recoupment as "the setting up of a demand arising from the *same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction

---

[8]The discussion of recoupment in the following pages is quoted almost verbatim from this court's 2004 published opinion in *Braun v. Bouma Dairy (In re Coast Grain Co.)*, 317 B.R. 796, 806-8 (Bankr. E.D.CA.2004). The basic principals have not changed and are still applicable here.

of such claim." *Newbery Corporation v. Fireman's Fund Ins. Co. (In re Newbery Corp.)*, 95 F.3d 1392, 1399 (9th Cir. 1996).

Recoupment is an equitable doctrine. *Id.* at 1401. It has been explained and distinguished from the setoff defense as follows:

> The main distinction between the doctrines of setoff and recoupment is that setoff is a form of cross action that depends in its application upon the existence of two separate, mutual obligations. Absent a right of setoff, each obligation would be independently enforceable. Moreover, rights of setoff most often arise between obligations stemming from separate transactions or events . . . .
>
> In contrast, recoupment is in the nature of a right to reduce the amount of a claim, and does not involve establishing the existence of independent obligations. *By definition, recoupment may arise only out of the "same transaction" or occurrence that gives rise to the liability sought to be reduced.*
>
> Recoupment often arises in contract cases, but it is not limited to contractual obligations, nor must the amount to be recouped be liquidated in order for the right to apply. Mutuality is also not required, and the relevant obligations need not both be prepetition in nature. Moreover, although the courts are split on the issue, the better view is that the automatic stay does not apply to bar or restrain a legitimate right of recoupment because, *properly construed, recoupment applies to define the obligation in question, rather than establish or enforce a separate debt.*

5 *Collier on Bankruptcy*, (15th ed. rev.) ¶ 553.10, pg. 553-99-100 (emphasis added).

The Supreme Court has observed that "a bankruptcy defendant can seek recoupment by meeting a plaintiff-debtor's claim with a counter claim arising out of the same transaction." *Reiter v. Cooper*, 507 U.S. 258, 265 n.2, 113 S.Ct. 1213 (1993). In *Reiter*, the Court also observed that "[r]ecoupment permits a determination of the 'just and proper liability on the main issue' and involves 'no element of preference.'" *Id.* at n.2, citing 4 *Collier on Bankruptcy*, (15th ed. 1991) ¶ 553.03, pg. 553-17.

The Ninth Circuit Court of Appeals has also observed that

recoupment does not run afoul of the Bankruptcy Code's ratable distribution policy. *Newbery Corp.*, 95 F.3d at 1398. The recoupment doctrine draws its authority from principles of equity and is thereby subject to the facts in each individual case. Recoupment "is allowed 'because it would be inequitable not to allow the defendant to recoup those payments against the debtor's subsequent claim.'" *Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan)*, 270 B.R. 749, 754 (9th Cir. BAP 2001) citing *Newbery Corp.,* 95 F.3d at 1401.

For recoupment to apply, the competing claims must arise out of the "same transaction" or occurrence. *Newbery Corp.*, 95 F.3d at 1399. *See also TLC Hospitals, Inc.*, 224 F.3d at 1011. To determine whether the claims arise from the same transaction, the Ninth Circuit has adopted a "logical relationship" test. *Madigan*, 270 B.R. at 755. *See also Newbery Corp.*, 95 F.3d at 1402; *TLC Hospitals*, 224 F.3d at 1012. The term "transaction" is flexible under the logical relationship test. *Newbery Corp.,* 95 F.3d at 1402. Courts applying this standard "have permitted a variety of obligations to be recouped against each other, requiring only that the obligations be sufficiently interconnected so that it would be unjust to insist that one party fulfill its obligation without requiring the same of the other party." *Madigan*, 270 B.R. at 755, *citing* 5 *Collier on Bankruptcy*, ¶ 553.10[1].

The concept of a "logical relationship" is not unrestrained. The Ninth Circuit has expressly cautioned that, generally, in the commercial setting, the "logical relationship" concept should not be applied "so loosely that multiple occurrences in any continuous commercial relationship would constitute one transaction." *Madigan*, 270 B.R. at 757, citing *TLC Hospitals*, 224 F.3d at 1012.

In *Newbery Corp.*, the chapter 11 debtor had defaulted on a bonded

construction project. Newbery Corp., the debtor, then entered into an agreement with its lender and with its surety, Fireman's Fund, whereby Fireman's Fund would complete Newbery's unfinished projects using the lender's collateral, Newbery's equipment. Fireman's Fund agreed to pay rent to the lender for use of the equipment. The projects were completed but Fireman's Fund failed to pay the rent. In the course of the chapter 11 proceeding, the lender assigned its rental claim back to Newbery. Newbery sued for the rent and Fireman's Fund moved for summary judgment on the defense of recoupment - Fireman's Fund sought to recoup its losses on the defaulted bonds against the rental obligation. Ruling in favor of Fireman's Fund, the court reasoned that the rent obligation stemmed directly from Newbery's default of the bonded contract. Applying the logical relationship test, the court held that Newbery's claim for equipment rental and Fireman's Fund's claim for indemnification arose from the same transaction. *Id.* at 1403.

In *TLC Hospitals*, the debtor was a Medicare provider under contract with the U.S. Dept. of Health and Human Services ("HHS"). The court allowed HHS to recoup pre-petition Medicare overpayments from post-petition Medicare estimated payments. The court examined the terms of the Medicare provider agreement and its statutory and regulatory underpinnings. It concluded that the Medicare system, which contemplated the making of estimated payments by HHS, and post-audit adjustments to reimburse HHS for overpayments, did constitute a single transaction for purposes of recoupment even though the separate components of the transaction occurred at different times. *TLC Hospitals*, 224 F.3d at 1012.

In both *Newbery Corp.* and *TLC Hospitals*, the court looked, *inter alia*, to the legal obligations of the parties as the foundation for a "logical relationship" between the competing claims. In *Newbery Corp.*, the court,

in essence, applied a "proximate cause" test to connect the competing claims – but for Newbery's breach of the construction contract, Fireman's Fund would not have had to rent the equipment. The court also noted that Newbery was contractually obligated to indemnify Fireman's Fund for its losses. The opposing claims arose from and were "intertwined" with the same contracts and acts of the parties. *Newbery Corp.*, 95 F.3d at 1403. Similarly, in *TLC Hospitals*, the court found evidence of Congressional intent to connect the estimated payment and post-audit reimbursement transactions based on the contracts and Medicare's statutory scheme. *In re TLC Hospitals*, 224 F.3d at 1013 (citing *United States v. Consumer Health Servs. of Am., Inc.*, 108 F.3d. 390, 395 (D.C. Cir. 1997)). The "logical relationship" was rooted in that foundation.

For SSA to successfully recoup the Overpayment from the Post-Petition Benefits, the SSA must establish that the Overpayment had both a legally cognizable and logical relationship to the Post-Petition Benefits. *Braun v. Bouma Dairy (In re Coast Grain–Bouma)* 2004 WL 2828472 (Bankr. E.D. Cal.). The SSA must also show that recoupment of the Overpayment from Angwin's Post-Petition Benefits would be an equitable remedy. No other application of the recoupment doctrine would be consistent with *Newbery Corp.* and *TLC Hospitals*.

**The *Lee v. Schweiker* case.** The main case that would tilt in Angwin's favor is the 3rd Circuit decision in *Lee v. Schweiker (In re Lee)*, 739 F.2d 870 (3rd Cir. 1984). Indeed, the ruling in *Lee* is so significant that the SSA devotes a substantial amount of its brief trying to distinguish it from applicable 9th Circuit law. However, the underlying rationale in the *Lee* decision is worthy of consideration. The court in *Lee* explained the distinction between the doctrines of setoff and recoupment. In *Lee*, the Third Circuit Court of Appeal ruled that *post-petition* social security "old

age" benefit payments are not subject to recoupment *on account of pre-petition overpayments* of social security "old age" benefit payments.

The decision in *Lee* does not rely as much on an analysis of whether the claims arise from the same transaction, as on its determination of the nature of the doctrine of recoupment; that recoupment must be based on some kind of contractual relationship.[9] *Lee* has been cited by at least one bankruptcy court in the Ninth Circuit without disapproval and this court does not find a conflict between *Lee* and the decision in *Newbery* with regard to the issues now before the court. [10]

In *Lee,* the debtor sought to recover money that the SSA had withheld from her checks both before and after filing her bankruptcy petition. The bankruptcy court's decision in favor of the SSA was affirmed by the district court. However, on appeal the Third Circuit reversed and remanded in part. The district court had decided that the debts in question, the overpayments to the debtor and the claim for future payments by the debtor, "arose out of the same transaction–'Social Security benefits due to

---

[9]As a caveat, the court is not suggesting here that recoupment would automatically apply if the competing claims were contractually linked. While the nature of the parties' relationship is a factor to be considered, it is not wholly dispositive. Recoupment is an equitable doctrine which may be denied based on the parties' conduct or other "equitable" factors regardless of the nature of relationship between the parties.

[10]The only opinion found on point from a court in the Ninth Circuit is *In re French*, 20 B.R. 155 (Bankr. D.Or., 1982), still good law, finding that a debt for overpayment of social security benefits was not excepted from the discharge and that recoupment was not available for its recovery from post-petition benefit payments ("[D]ebtor is entitled to summary judgment declaring that the debt owing to SSA is discharged in bankruptcy and enjoining the government from attempting to offset this obligation against post-bankruptcy Social Security benefits").

[debtor.]'"[11] In reversing, the Third Circuit distinguished the situation in the case from recoupment based on contracts.

> The fact that the same two parties are involved, and that a similar subject matter gave rise to both claims, however, does not mean that the two arose from the "same transaction." In bankruptcy, the recoupment doctrine has been applied primarily where the creditor's claim against the debtor and the debtor's claim against the creditor arise out of the same contract. In a number of cases involving the bankruptcy of healthcare providers, the court have allowed insurers to 'recoup' overpayments from amounts owed to the debtor post-petition under a contract providing for such recoupment. These contracts provided for advance payment to providers based on estimates of the amount which would ultimately be owed, subject to later correction. *The analysis used in these cases is based on the treatment of executory contracts in bankruptcy.*

*Id.*, emphasis added (citations omitted).

In situations where the government benefits are paid to individuals, courts have held that "a social-welfare statute entitling an individual to benefits is not a contract, and that the obligation to repay a previous overpayment is a separate debt subject to the ordinary rules of bankruptcy." *In re Lee*, 739 F.2d at 876.

> We find the distinction persuasive. Social welfare payments, such as social security, are statutory "entitlements" rather than contractual rights. The purpose of these payments is to provide income to qualifying individuals. Although the paying agency can ordinarily recover overpayments, just as creditors can ordinarily obtain payment from a debtor's future income, the Bankruptcy Code protects a debtor's future income from such claims once a petition has been filed . . . .

*Id.*

In conclusion, *Lee* held that the SSA could not recoup previous overpayments from benefits payable after the petition was filed; the right of SSA to recover pre-petition debts should not be "treated as part of a 'contract' between the government and the debtor." *Id.*

/ / /

---

[11]On appeal, the court held that the SSA was entitled to retain, as a setoff, the amount withheld pre-petition.

In a Ninth Circuit Bankruptcy Appellate Panel case citing *Lee*, *In re California Canners and Growers*, 62 B.R. 18 (9th Cir. BAP 1986), the debtor objected to recoupment, saying the claims did not arise from the "same transaction." While the bankruptcy court had not made a specific finding of fact on that issue, in reversing on appeal to deny recoupment the court said it was clear that "the pre-petition debt that [the creditor] seeks to recover represents the final steps in several single transactions, while "[t]he post-petition claims of [debtor against the creditor] represent the first steps in a number of separate and distinct transactions. The goods in [the debtor's] post-petition invoice are not the same goods as in [the creditor's] pre-petition invoice." *Id.* at 20.

In another Ninth Circuit Bankruptcy Appellate Panel opinion, *In re Harmon*, 188 B.R. 421 (9th Cir. BAP 1995), which granted a right to recoupment, the panel reversed the bankruptcy court's decision and ruled that the Oregon State Accident Insurance Fund Corporation ("SAIF") could use recoupment to reduce the debtor's award for permanent disability by the excess amount she received from it on account of temporary disability. *Harmon* distinguished its holding from that in *Lee*, saying,

> On the facts here, two awards were made, time-loss and permanent disability: on the one hand, income lost from work interruption, and on the other, loss of future income-earning capacity based on permanent disability. Each liability was asserted by the debtor pre-petition and were treated independently. The trial court concluded that the two awards should be considered as separate or independent transactions precluding application of recoupment. This analysis focused on the sequelae of the injury rather than on their common origin, which was the work-related injury. While there may be a facial issue as to whether the obligations between the parties arose from a single transaction thereby warranting recoupment, *logic requires the conclusion that both claims flow from the same prepetition injury. Thus, whatever rights or remedies the debtor had, accrued prepetition.* Further, the court should view the claims of the parties as perceived by the unitary perspective of the Oregon statute, which created the remedies for these rights.

> The liabilities at issue in the instant case are governed by a statutory plan which provides coverage to all workers in the State of Oregon for work-related injuries. The State of Oregon intended to provide indemnity for employee injuries in the work-place through a comprehensive statute governing the rights and liabilities of employers and their employees.

*Id.* at 425-26, emphasis added (citations omitted).

**Application to the Present Case.** Turning now to the case at hand, there is no dispute that Angwin was overpaid Disability Benefits prior to November 2011 when the SSA discovered her change in marital status, and there is no dispute that the SSA has a substantial unsecured claim in this bankruptcy case for repayment of the Overpayment. However, in order to exercise the doctrine of recoupment as a means to recover the Overpayment from Post-Petition Benefits, the SSA would have to show that Angwin's right to receive Post-Petition Benefits bears a substantial relationship to the transactions and events by which she received the Overpayment. While the case in *Lee* turned primarily on the court's conclusion that the relationship between the parties was not contractual in nature, the test is broader in the Ninth Circuit, and a contractual relationship, or lack thereof, is only one factor to consider in the "substantial relationship" analysis.

Here, the Overpayment that occurred pre-petition appears to be separate and distinct from Angwin's right to receive Post-Petition Benefits and the court is not persuaded that the pre-petition transactions which resulted in the ALJ Judgment bear a substantial relationship to Angwin's post-petition eligibility for further benefits. It appears Angwin is still disabled and otherwise eligible to receive Post-Petition Benefits. Those benefits are based on Angwin's present condition, not on her past condition. The mere fact that the Overpayment and the Post-Petition Benefits may both flow from the same body of law, does not make them "substantially related" for purposes of recoupment.

Looking at this issue from an equitable perspective, the SSA alleges, "It would be unjust to insist that Social Security to [sic] pay additional disability payments to the Defendant without requiring that the Defendant fulfill her obligations to pay back the overpayment." (First Amended Complaint, ¶ 17.) It is difficult for this court to understand how the United States of America, with all of its resources, can be "unjustly" treated by a single individual who is apparently unable to support herself. Angwin seeks to discharge her "obligation" to repay the SSA under a body of law, the Bankruptcy Code, which the United States enacted long ago specifically to give individuals the ability to discharge such obligatins and move on with their lives.

The court is hereby closing the door on the SSA's recoupment theory, however, the SSA is not without a remedy. The ALJ found that Angwin was "at fault" for not properly reporting her change in marital status, but that does not automatically mean that she is a bad person or that she consciously intended to mislead the SSA. In its first claim for relief, the SSA seeks a determination that its Overpayment claim should be excepted from discharge based on actual fraud. § 523(a)(2)(A). The degree of Angwin's "fault" will be more thoroughly developed in the context of the "fraud" claim. If the SSA is unable to prove its fraud claim, then equity would not be served in imposing the same result on Angwin through an equitable remedy. If Angwin committed actual fraud, then the SSA's "equitable" argument will be vindicated in its first claim for relief and the Overpayment claim will be nondischargeable on legal grounds.

**CONCLUSION.**

The Motion seeks summary adjudication of the SSA's right to recoup the Overpayment from Angwin's Post-Petition Benefits. The relationship between Angwin and the SSA is not contractual. Rather, it is

based on social welfare statutes intended specifically to provide ongoing support for disabled individuals who cannot support themselves. Based on the weight of authority cited above, and consideration of the factors which bear upon the doctrine of recoupment, the court is persuaded that the Overpayment and the Post-Petition Benefits are not part of the "same transaction" and do not share such a "logical relationship" that recoupment should be applicable. The court is further persuaded that "equity" does not compel application of the recoupment doctrine on these facts.

Based on the foregoing, the SSA's Motion for summary judgment will be denied with respect to the second claim for relief in this adversary proceeding. The second claim for relief will be dismissed. By separate order, the court's stay of the first claim for relief will be lifted. A new status conference will be set and the adversary proceeding may proceed to trial on the first claim for relief.

Dated: April 5, 2016

W. Richard Lee
United States Bankruptcy Judge

# Instructions to Clerk of Court

**Service List - Not Part of Order/**Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked __x__, via the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and _X__ Other Persons Specified Below:

Nancy V. Angwin
5360 North 1st, #L
Fresno, CA 93710

Jeffrey J. Lodge, Esq.
Assistant U.S. Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721